[Sac. No. 1153.   Department Two.—September 20, 1904.]

## J. FAUBEL, Appellant, v. S. J. McFARLAND et al., Repondents.

MINING CLAIM—TENANCY IN COMMON—ADVERSE POSSESSION OF COTEN-ANT.—The possession of one tenant in common of a mining claim is that of his cotenant, and inures to his benefit until he does, by some notice, actual or constructive, indicate to him that such possession is hostile or adverse. One tenant in common cannot by mere exclusive possession acquire the title of his cotenant.

ID.—FAILURE TO CONTRIBUTE TO ASSESSMENT-WORK.—The mere failure of one of the cotenants to contribute to the assessment-work upon the mining claim did not deprive him of his interest therein, if the other tenant in common did not avail himself of the mode provided for his protection in section 2434 of the Revised Statutes of the United States.

ID.—ESTOPPEL NOT SHOWN.—The evidence reviewed and held not sufficient to create an estoppel against the defendant from asserting his half-interest in the mining claim, in the absence of a showing that he had any knowledge that the deed to plaintiff and his grantor from the other cotenant purported to convey the entire property, or that plaintiff relied upon, or was influenced in his conduct by, any statement made by the defendant.

APPEAL from a judgment of the Superior Court of Madera County and from an order denying a new trial. W. M. Conley, Judge.

The facts are stated in the opinion.

·G. H. Perry, for Appellant.

A. H. Ricketts, and Raleigh E. Rhodes, for S. J. McFarland, Respondent.

A. O. Colton, for J. Quadt and J. P. Martin, Respondents.

HARRISON, C.—Action to quiet title. Judgment was rendered in favor of the defendants, and the plaintiff has appealed. The correctness of the judgment is challenged only in so far as it was in favor of Samuel J. McFarland. In this respect the court found that the plaintiff and McFarland were each the owner of an undivided half of the premises in controversy between them,—the "Alpha Mine," situate in Madera County,—and rendered judgment that the plaintiff take nothing against him by reason of this action.

The title of each to the premises is derived through a decree of foreclosure and a sale thereunder, wherein the property was sold November 26, 1894, by a commissioner appointed therefor, to Victoria B. McFarland and the said Samuel J. McFarland; and there having been no redemption therefrom, the commissioner executed a conveyance to them June 6, 1895, which was recorded in the office of the county recorder June 10, 1895. The title thus conveyed to Victoria became vested in the plaintiff by virtue of certain mesne conveyances, while that conveyed to Samuel has never been conveyed by him. As they were therefore tenants in common, the plaintiff was not entitled to the relief sought by him. He contends, however, that it appears from other evidence in the record that he has acquired the title to the whole of the property by adverse possession, and that the respondent Samuel is estopped from disputing his title thereto.

After the sale by the commissioner, but before the time for redemption had expired, Samuel had some correspondence with an attorney named Clement looking to an assignment of the certificate of sale held by himself and Victoria (his mother). No assignment of the certificate was made, however, but thereafter Victoria executed an agreement to sell the property to one Cabaniss, in which reference was made to the letter of Samuel. In this agreement it is recited that Cabaniss was acting therein through his attorney, Clement, and the execution of the agreement is witnessed by both Clement and Samuel. Thereafter Victoria executed a conveyance

of the property to Cabaniss July 22, 1895. At the trial herein the plaintiff testified that Clement was his attorney in conducting the negotiation for this purchase of the property, and that he, the plaintiff, paid the money and received the deed executed to Cabaniss. He does not claim, however, to have taken possession of the property until after the deed from Cabaniss in February, 1896. On the other hand, the husband of Victoria testified that Clement acted as attorney for Mr. Cabaniss, and there was no evidence that Samuel saw the deed to Cabaniss or knew of its contents. Cabaniss conveyed the property to the plaintiff and one Benton February 29, 1896, but the deed was not recorded until April, 1900. Benton conveyed his interest to the plaintiff in October, 1897.

The plaintiff testified that after the deed from Cabaniss to himself and Benton he went to the property and let a contract to run tunnels therein to J. P. McFarland, the father of Samuel; that at the time he took charge of the mine he saw Samuel there and had a conversation with him, in which Samuel wished him success; that he again saw him on the property in 1900; that he visited the property once or twice every year; that J. P. McFarland was in charge up to 1897; and that after that nobody was in charge, no work being done other than assessment-work.

It cannot be held that the evidence thus presented created an estoppel against Samuel from asserting his title to the undivided half of the property. He made no representations to the plaintiff respecting the character of his title, nor does the plaintiff claim to have relied upon any statement by him, or to have been in any respect influenced thereby in his conduct. At the time that he took the conveyance from Cabaniss he had notice from the public records that Samuel was the owner of an undivided half of the property, and that he had never conveyed the same. The presence of Samuel at the mine when the plaintiff went there after receiving the deed from Cabaniss was consistent with this record, as was also his wishing the plaintiff success. It does not appear that Samuel knew that the deed from his mother to Cabaniss or from Cabaniss to the plaintiff purported to convey the entire property, and the deed from Cabaniss to the plaintiff was not placed upon record until more than four years after its date.

Neither does the evidence show that the plaintiff had acquired any title by adverse possession of the property. Being tenant in common with the respondent, the plaintiff could not by mere exclusive possession, even if such had existed, acquire the title of his cotenant. His possession was that of the respondent, and would inure to the benefit of the respond·ent until he should by some notice, actual or constructive, indicate to him that such possession was hostile or adverse. The rule on this subject has been so often stated that it is sufficient merely to refer to some of the leading cases. (*Hiller* v. *Myles,* 46 Cal. 539; *Unger* v. *Mooney,* 63 Cal. 592;[1] *De Frieze* v. *Quint,* 94 Cal. 662;[2] *Winterburn* v. *Chambers,* 91 Cal. 170.) The evidence herein falls far short of meeting the requirements of the rule thus indicated.

The fact that Samuel did not contribute to the assessment-work done did not deprive him of his interest in the mine, or transfer his interest to the plaintiff. The Revised Statutes of the United States, section 2434 (U. S. Comp. Stats. 1901, p. 1498) provide the mode in which the plaintiff could have protected himself, but he did not avail himself of that mode.

There is a suggestion in the appellant's brief, although it is not directly stated, that in the negotiation for the purchase by Cabaniss in 1895 it was the intention of the parties thereto that Samuel should join in the execution of the deed. There is no evidence tending to show this fact, however, and in consideration that his title was clearly shown by the records, and that Mr. Clement acted as attorney for Cabaniss and must have carefully examined the deed, it is not to be presumed. But even if such were the intention, it is not available to the plaintiff in this action under the pleadings herein.

The judgment and order should be affirmed.

Cooper, C., and Gray, C., concurred.

For the reasons stated in the foregoing opinion the judgment and order are affirmed.

Henshaw, J., McFarland, J., Lorigan, J.

---

[1] 49 Am. Rep. 100.      [2] 28 Am. St. Rep. 151, and note.