[Civ. No. 266.   Third Appellate District.—December 31, 1906.]

## C. E. TABLER, Appellant, v. WILL PEVERILL et al., Respondents.

QUITCLAIM DEED—HUSBAND AND WIFE—SEPARATE PROPERTY—COMMUNITY PROPERTY—AFTER-ACQUIRED TITLE.—A quitclaim deed from a husband to a third party from whom the wife takes a quitclaim is ineffectual to vest in her any title subsequently acquired by the husband in the land as community property.

ID.—DEED FROM DIVORCED WIFE—TENANCY IN COMMON—COMMUNITY PROPERTY UNDISPOSED OF.—In an action of divorce, where issue was joined as to the separate or community character of the real prop-

erty acquired by the husband, but the property was undisposed of by the decree, the divorced parties became tenants in common of the community property; and a deed from the divorced wife conveyed an undivided half thereof.

ID.—POSSESSION BY DIVORCED WIFE NOT PRESCRIPTIVE—ABSENCE OF NOTICE OF OUSTER.—The possession of the community property by the divorced wife, however adverse in fact, did not begin to become prescriptive as to the divorced husband or his heirs, in the absence of a notice, either actual or constructive, imparting knowledge of the hostility of her possession. Until such notice the possession of one tenant in common will be deemed in law the possession of both and to have been amicable.

ID.—ACTION TO QUIET TITLE—PLEADING—CLAIM OF WHOLE ESTATE—ISSUE—PROOF OF UNDIVIDED HALF—RIGHT TO JUDGMENT.—In an action to quiet title where the plaintiff claimed the whole property, and the title was in issue, and it appeared from defendant's evidence that plaintiff was entitled to an undivided half thereof, as successor in interest of the divorced wife, he is entitled to judgment therefor, notwithstanding he did not specifically plead such title.

ID.—ERRONEOUS JUDGMENT FOR DEFENDANT—FINDINGS AGAINST EVIDENCE.—Where the court erroneously rendered judgment for defendant for the entire property, subject to the administration of the estate of the divorced husband, which was only entitled to an undivided one-half of the property, the findings are against the evidence as to the other undivided one-half thereof belonging to plaintiff.

APPEAL from a judgment of the Superior Court of Fresno County, and from an order denying a new trial. George E. Church, Judge.

The facts are stated in the opinion of the court.

M. B. Harris, and Bernhard & Sutherland, for Appellant.

Smith & Ostrander, for Respondents.

CHIPMAN, P. J.—Action to quiet title to certain land in Fresno county.

The cause was tried by the court without a jury and defendant, Will Peverill, had judgment that he is the owner in fee of the land subject to the administration of the estate of Christopher Peverill, deceased. Plaintiff appeals from the judgment and from the order denying his motion for a new trial.

Prior to the filing of the complaint (which was August 23, 1903), defendant Martha J., widow of said deceased, on April 28, 1903, conveyed all her interest in the land to defendant Will Peverill, as did also defendants Mary M. and George A., children of deceased, on April 29, 1903. The default of Martha J. was duly entered and Mary M. and George A. disclaimed having any interest in the property. Defendant Will Peverill alone answered to the complaint.

The complaint is in the form usual in actions to quiet title. The answer and cross-complaint of defendant Will Peverill denies plaintiff's title and alleges title in himself subject to administration of the estate of Peverill, deceased. In his cross-complaint asking that his title be quieted as against plaintiff, defendant alleges that on April 16, 1892, one Charles H. Robinson was the owner in fee of the property, and that on that day he and his wife, Leonora L., conveyed the same to Christopher Peverill, who thereupon became and remained the owner thereof until May 20, 1900, on which day he died intestate, leaving said property to his heirs at law, the said defendants. Plaintiff's answer to the cross-complaint denies the alleged title of Christopher Peverill and sets up title in plaintiff, claiming that said Robinson agreed to sell said property to Christopher Peverill, on March 15, 1888; that on November 20, 1890, said Peverill conveyed his interest to one Coulthard, who, on March 31, 1892, conveyed said property to Clara S. Peverill, through whom by mesne conveyances the property was conveyed to plaintiff; that from March 31, 1892, said Clara Peverill and her grantees and successors in interest and plaintiff herein, "have been openly, notoriously, continuously, uninterruptedly, peaceably and adversely to defendant Will Peverill and to his grantors and predecessors in interest and to all the world, in the possession of and seised of said premises under a claim of right and title therein and thereto, and as the owner in fee." Sections 318 and 319 of the Code of Civil Procedure are pleaded in bar of the cross-complaint. The statute of limitations, however, is not urged in the brief of plaintiff and will not be further noticed.

The court found, and the findings are not challenged, that Robinson conveyed the property as alleged by defendant; that Christopher Peverill died intestate May 30, 1900, leaving as heirs at law the persons above named as such; that Martha,

4 Cal. App.—43

Mary Minerva and George Peverill conveyed to defendant as alleged. Plaintiff assigned as error the insufficiency of the evidence to justify the findings following: That defendant Will Peverill is the owner of the land subject to administration of said estate; that plaintiff has not nor have his grantors, been openly, notoriously, etc., in adverse possession of said premises and that plaintiff is not the owner thereof. It was stipulated that Charles H. Robinson is the common source of title of plaintiff and defendant.

An abstract of title was agreed upon as including all records relating to the title except a deed from J. F. Cowdery to plaintiff. This abstract shows the following: 1. Bond for deed from Robinson to Christopher Peverill, dated March 15, 1888; 2. Quitclaim deed from Christopher Peverill to C. Coulthard, dated November 20, 1890; 3. Quitclaim deed from Coulthard to Clara S. Peverill (divorced wife of Christopher and mother of Mary Minerva and George), dated March 31, 1892; 4. Robinson and wife to Christopher Peverill, by grant, bargain and sale deed, dated April 16, 1892: 5. Grant, bargain and sale deed from Clara S. Peverill to California Savings and Loan Society, dated May 13, 1899; 6. Grant, bargain and sale deed of California Savings and Loan Society to J. F. Cowdery, dated May 14, 1903; 7. Cowdery, by grant, bargain and sale deed to plaintiff, dated June 15, 1903.

There was introduced by plaintiff, as bearing upon the issues, the judgment-roll filed in the clerk's office of San Benito county, in the action entitled *Clara S. Peverill* v. *Christopher Peverill,* for divorce. The judgment showed that the verified complaint was filed February 7, 1896, in San Benito county, in which plaintiff averred that she had for four months last past been a resident of said county; that defendant had deserted her "from the second day of February, 1895; that the issue of the said marriage are: Mary M. Peverill, aged 16 years; William C. Peverill, aged 15 years; George A. Peverill, aged 14 years"; that a decree was granted plaintiff in the action as prayed for on the ground of desertion; which the decree adjudged took place February 2, 1895, and the custody of the children given her; the decree was granted March 25, 1896. No reference was made to any property in the complaint.

In his answer and cross-complaint the defendant in the divorce action set forth certain personal property and also the

land in question, claiming that all of the property was community property. The answer to the cross-complaint denied that "the real estate set forth and described in defendant's cross-complaint is now the community property of said plaintiff and defendant, but alleges the fact to be that the said real estate and the whole thereof is, and for many months past has been, the separate property of said plaintiff herein, and that said defendant has no interest, ownership or title thereto." The decree adjudged "that the plaintiff be and she is hereby awarded the community property of said parties consisting of household and kitchen furniture and farming tools and implements," being all the personal property mentioned in the cross-complaint except one horse, one mule, one set of double harness, one cart and some poultry. Of this latter and the real estate, no disposition was made in the decree.

It does not appear when Christopher married Martha, after his divorce, but it does appear that she is his surviving widow.

It appears that the Savings and Loan Society loaned $500 to Christopher on May 10, 1892, and he and his then wife, Clara, executed their mortgage of the premises to secure payment of the loan. This mortgage rested upon the property up to 1899, and, as shown above, Clara Peverill, on May 13, 1899, conveyed the property to the Savings and Loan Society and by an agreement dated May 31, 1899, the Loan Society entered into a contract to sell her the land for the sum of $800 to be paid in installments, the last one falling due May 10, 1903, she to pay the taxes on the land "and to cultivate and care for said premises, first party (the society) agreeing, on payment and performance of the other covenants" to give second "party a deed." It appeared that Clara Peverill paid three annual installments, 1900, 1901, 1902, of $50 each, and, as we have seen, in May, 1903, deeded the property to the Savings and Loan Society probably because she could make no more payments.

The record title clearly runs from Robinson to Christopher Peverill and was held by him as community property at the time the decree of divorce was entered, having been acquired during his marriage with Clara. (Civ. Code, sec. 164.) The record does not disclose the terms of Robinson's bond for a deed.

One of the issues in the divorce case was as to how Peverill held the property, he claiming it as community and she claiming it as her separate property, presumably by virtue of the quitclaim deed of Christopher to Coulthard and the latter's quitclaim deed to her.    But Robinson conveyed to Christopher subsequently and Christopher's after-acquired title vested valid title in him, thus rendering his previous quitclaim to Coulthard ineffectual.    (1 Devlin on Deeds, sec. 27; *MacDonald* v. *Edwards,* 44 Cal. 328, and cases there cited.)    The decree of divorce failed to dispose of the real estate in question then owned by Christopher.    Being community property, he and his divorced wife Clara, as to this land, became tenants in common.    (*DeGody* v. *DeGody,* 39 Cal. 157; *Biggi* v. *Biggi,* 98 Cal. 35, [35 Am. St. Rep. 141, 32 Pac. 803].)    Respondent contends that the question of plaintiff's right to a one-half interest in the property as the successor of Clara Peverill was not raised by the pleadings; that because plaintiff claimed throughout the trial that Clara was the owner of the entire property, "plaintiff will not now be permitted to change his theory of the case by the claim that the property was community property."    The pleadings put the title in issue.    Plaintiff had the right to claim the entire title and show whatever interest he had in the property.    Respondent was not misled to his injury by any position taken by appellant, for it is partly through the evidence submitted by respondent, at the trial, that the true situation of the title was disclosed.

There was considerable evidence introduced to show adverse title in Clara.    We think, however, that it was wholly insufficient.    Clearly she failed to show, if it were possible to so show, that prior to the decree of divorce she had possession adversely to her husband.    By the decree she became a tenant in common with him and that relation continued to the day of his death.

It was said in *Miller* v. *Myers,* 46 Cal. 535 (cited approvingly in *Faubel* v. *McFarland,* 144 Cal. 717, [78 Pac. 261]): "It is clear that an adverse holding and claim of title do not, of themselves, constitute an ouster.    The tenant out of possession has a right to assume that possession of his cotenant is *his* possession, until informed to the contrary, either by express notice or by acts and declarations which may possibly be equivalent to notice under certain circumstances.

But until he has notice, either actual or constructive, in some form, that the possession of his cotenant has become hostile, it will be deemed in law to have been amicable, notwithstanding the tenant in possession may in fact have been holding adversely.'' In *Unger* v. *Mooney,* 63 Cal. 586, 592, [49 Am. Rep. 100], the court said: ''Hence there must be some conduct of the occupying tenant evidenced by acts or declarations, or both, in its nature and essence hostile to the title of the tenant out of possession, and imparting knowledge of such hostility to the latter, to affect his right.'' (See, also, *Winterburn* v. *Chambers,* 91 Cal. 170-180, [27 Pac. 658].) See, also, subject discussed by Mr. Wood in his work on Limitations, section 266, where it is said that ''the evidence must be stronger than would be required to establish a title by possession in a stranger.''

The decree of divorce was entered March 25, 1896. Mrs. Peverill testified as to her residence: ''I went to the Purington ranch in the early part of 1901. I did not live continuously on the place from the time I separated from my husband until I went to the Purington ranch. I was away at different periods, and one time changed my residence absolutely to San Benito county for all of a year,'' where she resided with her father. This was while she was procuring her divorce. The statute in our opinion did not begin to run, if at all, prior to March 25, 1896. Mrs. Peverill was awarded the custody of the children (all minors), and she testified that after obtaining her divorce (at what date she did not say) she ''went back to the place involved in this suit'' and lived there with her children. The ranch was her home; she was away frequently, employed as a nurse, sometimes for two or three months, but the children remained there and ''the boys farmed the ranch.'' Her son ''Will was [1896] fourteen or fifteen years old''; George was a year younger than Will and Mary was a year older than Will. Christopher died May 30, 1900, and whatever interest he then had in the property vested immediately in his heirs at law. Assuming that the statute was running against Christopher Peverill from March 25, 1896, it had run but four years and two months when he died. Unless, therefore, the evidence will warrant us in holding that at his death the statute continued to run against these children, plaintiff has failed to establish his contention. These children, as we

have seen, became tenants in common with their mother. The evidence is that they "worked [the place] and applied the proceeds of their work upon the interest of this debt [the mortgage debt]." Mrs. Peverill testified: "I did not at any time while occupying the place, after the separation from my husband, make any statement to my children to the effect that I was the sole owner of the place, and that my children had no interest in it. I had no occasion to say anything about it at all. I have no recollection that any of them ever inquired of me as to the title of the land. The children have marketed the crops and received the proceeds and expended the same for the use of the family. I have left the matter entirely to them at times." These children continued to sustain this relation, looking after the property, jointly with their mother and solely when she was absent, as happened often, until February, 1901, when witness Humphrey, as he testified, leased the place for that year and Mrs. Peverill went to the Purington place to live. There is not the slightest evidence tending to show that she held the place or claimed it adversely to her children, in the sense of the statute, from the death of her late husband (May 30, 1900) to the leasing of it to Humphrey (February, 1901). Whatever view may be taken of the evidence up to this time, the continuity of her alleged adverse possession was broken from May to the following February. Conceding that it was renewed by this act of ownership in leasing the property, which we are far from holding as sufficient, against her tenants in common, the statute had not run the requisite time when the action was commenced.

The findings of the court, however, that plaintiff had no interest in the property and that defendant was the owner thereof, subject only to administration, are not supported by the evidence.

The judgment and order are reversed and the cause remanded for a new trial.

McLaughlin, J., and Buckles, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 30, 1907, and the following opinion was then rendered thereon:

CHIPMAN, P. J.—It is now claimed, as we understand the petition, that by the decree of divorce introduced by plaintiff, the property rights of the parties to the divorce action were fully and finally determined. It appeared from the complaint that plaintiff, Mrs. Peverill, said nothing about any property. In his answer and cross-complaint defendant Peverill referred to certain personal property and also to the real property now in controversy, all of which he averred was the community property of the parties.

In her answer to the cross-complaint, plaintiff does not mention the personal property, but denies that the real property is community property and avers that it is her separate property. The decree, as pointed out in the opinion, purported to dispose only of certain specified articles of community and personal property.

It seems clear to us that the decree left the real estate undisposed of. In the present action we are not seeking to set aside or disturb the decree, but only to give it effect so far as we may do so. If it be true, as we think it is, that the real property remained undisposed of by that decree, the parties remained tenants in common of the real property as was pointed out. Looking then to the conveyances, we find that Christopher Peverill conveyed by quitclaim to Coulthard November 20, 1890. But as Peverill then had no title, he conveyed nothing. On April 16, 1892, Robinson, the source of title, conveyed by grant, bargain and sale to Peverill, who died without conveying to anyone, and his interest vested at his death in his heirs at law. The opinion shows how it came about that his former wife, Clara, had an interest in the property as tenant in common, and that her grantee succeeded to that interest.

We are unable to discover any error in the decision heretofore rendered, and the petition for a rehearing is therefore denied.

Hart, J., and Burnett, J., concurred.