[Civ. No. 3393.   Third Appellate District.—January 4, 1928.]

EDWARD E. HULING, Respondent, v. A. H. SECCOMBE, Appellant.

C. F. Seccombe, Pascal H. Burke and Burrell D. Neighbours for Appellant.

Wirt C. Smith and Frank H. Snyder for Respondent.

THOMPSON (R. L.), J., *pro tem.*—This is an appeal from a decree quieting title to a certain lot situated in Long Beach, California. Appellant contends that the findings and judgment are not supported by the evidence.

Much of the evidence was stipulated. The respective parties claim title through a common ancestor. The property in question is an unimproved vacant lot in a suburb of Long Beach, which has never been used, inclosed, occupied, or cultivated. It was without buildings, fences, or street improvements. The only evidence tending to show adverse possession on the part of respondent or his predecessor in title was the payment of taxes for the required length of time and the possible clearing away of weeds from the lot on one occasion. February 2, 1905, William Clague was the owner of the lot. On March 30, 1908, he executed and delivered to Emma D. Davis his promissory note for $2,700 secured by mortgage on said premises. April 14, 1910, for a valuable consideration Clague executed and delivered his deed of conveyance of said lot to John H. Warner. June 17, 1910, Warner deeded it to Henry Freedman. On the last-named date foreclosure proceedings upon said mortgage were commenced by Emma D. Davis against Clague, Freedman, and others. Subsequently the action was dismissed as to Freedman. Upon proceedings duly had a decree of foreclosure was entered August 10, 1910, and a month later the sheriff sold the property to the mortgagee, Davis, under the decree of foreclosure. Fourteen days later Freedman executed a deed of conveyance of this property to one Foreman, who, in turn, quitclaimed the tract to appellants. June 11, 1911, Clague formally redeemed the property, and subsequently conveyed it to the father of respondent Edward E. Huling, who claims title through a decree of distribution duly made in his father's estate. This action to quiet title was then instituted November 21, 1923.

It thus appears that the record title was in appellants. Having formally conveyed the premises to Warner by

deed dated April 14, 1910, Clague had thereby divested himself of all title, and had none to convey to the deceased.

■ A judgment debtor has the right to redeem land from a mortgage foreclosure notwithstanding the fact that he previously transferred his title to another. (Code Civ. Proc., sec. 701; *Yoakum* v. *Bower*, 51 Cal. 539; *Bateman* v. *Kellogg*, 59 Cal. App. 464, 479 [211 Pac. 46].) The effect of redemption, however, is to satisfy the mortgage debt and discharge the lien. Where redemption from foreclosure sale is accomplished by the mortgagor himself, it cancels the mortgage sale. (2 Jones on Mortgages, 7th ed., 642, sec. 1051 d.) ■ The redemption of property by a mortgagor after a foreclosure sale, adds nothing to his title, but the redemption inures to the benefit of his former grantee. (Civ. Code, sec. 1106; 2 Jones on Mortgages, 7th ed., 644, sec. 1051 d; *Witham* v. *Blood*, 124 Iowa, 695 [100 N. W. 558].) In *Bateman* v. *Kellogg, supra*, it is said: "When Woodruff redeemed the property, the foreclosure sale to Stickney was terminated (Code Civ. Proc., sec. 703), thereby leaving the legal title to the land the same as if no mortgage had been given. Therefore his redemption could not have the effect, either in law or in equity, of transferring appellant's title to him." It necessarily follows that whatever benefits were acquired by Clague by virtue of his redemption of the mortgaged premises inured to the benefit of his former grantee Warner, and thence to his grantees, and hence Clague had no title to convey to Huling, and respondent is therefore not the owner of the record title.

■ Nor did the record owners forfeit their title by failure to institute proceedings to cancel the deed from Clague to Huling. "There are no equities in favor of a party seeking by adverse holding to acquire the property of another. Hence the rules, that user measures the extent of a prescriptive right, and every statutory requirement of the acquisition of lands by adverse possession must be fulfilled." (1 Cal. Jur. 492, sec. 3.) In the case of *Secret Valley Land Co.* v. *Perry*, 187 Cal. 420 [202 Pac. 449], which was an action to quiet title, Mr. Justice Sloane approvingly quoted the following language: "Both parties are claiming under a record title from a common source, and the only question is superiority. Limitation or lapse

of time does not perfect a defective record title in the absence of possession. If the situation of these two parties had continued for ten, fifteen or twenty years longer, and the question should then arise, as now, as to which title of record is superior, a plea of limitations would not avail for either party against the other. Appellants show that they have legally paid taxes on the land. . . . One cannot acquire title to the land of another by paying the taxes on it, nor will a claim of title under a void deed, although recorded, ripen into a fee by lapse of time, nor will limitations run against an owner of record in favor of a claimant not in possession, nor is it incumbent upon the owner to sue for cancellation of a void deed, or to take steps to remove a cloud upon his title. . . . A mere claim of title even of record, unaccompanied by adverse holding, will not start the statute. . . . A defendant holding the legal title, or a paramount claim to the legal title, is not called upon to take action against a hostile claim which is not of a nature to ripen into a valid adverse title.''

The record in the instant case is insufficient to sustain a finding of adverse possession in respondent. The evidence is undisputed to the effect that the lot in question was vacant during ten years prior to the commencement of this action, and was unoccupied, uninclosed, uncultivated, and unused. It contained no betterments and had no sidewalks or street improvements whatever. During the winter it was usually flooded with water, and in summer-time it was overrun with weeds. The only evidence tending to show adverse possession consisted of the payment of taxes by respondent. He testified that once he offered it for sale, but he does not state when, to whom, or how he offered it for sale. He also claims to have once cut the weeds from the place, but the evidence as to this circumstance is unsatisfactory. In this regard respondent testified: ''I haven't been to that property for ten months, maybe more. Q. What acts of ownership, or control have you seen your father perform? A. Once I went there with him myself and helped clean the weeds off the property; I can't tell you what year that was. . . . So far as I know, he (my father) never offered it for sale. . . . Once since that time, I had the weeds cleaned off. . . . I offered to sell it about four

years ago." Upon the contrary, two witnesses who had lived adjacent to the property testified that the lot was never occupied, cultivated, or used, and that they had observed no acts or evidence of ownership on the part of anyone. Respecting the cutting of weeds, Mr. Seccombe testified: "I moved there (adjoining the property) in 1914 or 1915. . . . I never seen anything done to it at all, . . . (except) long ago, the fire department was down there and put a grass fire out on it. . . . Q. Did you ever see anyone cut any weeds on it? A. No, sir, I never did. . . . Q. Did the lot show that the weeds had been cleared off of it? A. No, I never noticed it, . . . in fact, I never seen any weeds cut off of there at any time one way or another. . . . It was a swamp. . . . It used to be full of water every winter."

This is an insufficient showing upon which to rest a claim of adverse possession. The mere occasional cutting of wild grass or weeds will not suffice to base a claim of adverse possession. (2 C. J. 67, secs. 24-26.)

Having failed to establish a legal title to the lot in question, there is no presumption in favor of respondent's possession of the premises, and even though he actually occupied the property, it would be deemed to be in subordination to the legal title held by another, and the burden would be upon respondent to affirmatively establish all the necessary elements constituting adverse possession. (Code Civ. Proc., sec. 321.) But the evidence is undisputed that the premises were not in fact actually occupied by any person whomsoever. Nor can the property be deemed to have been possessed or occupied pursuant to the provisions of section 323 of the Code of Civil Procedure, for it was not cultivated or improved; it was not fenced or inclosed; it was not used to supply fuel, or fencing timber, or pasturage, or for any use whatever. The record in this case is devoid of evidence of any acts on the part of respondent to indicate a claim of adverse possession, with the exception of the payment of taxes for the required length of time. Adverse possession must be based upon either actual or constructive notice to the legal owner. Even though the possession relied upon is constructive, it must nevertheless be "open, notorious, exclusive, visible and not consistent with the record

title. . . . It must indicate not alone who the occupant is, but it must indicate an occupant other than the record owner." (1 Cal. Jur. 534, sec. 28.) The circumstances must be sufficient to put a prudent man upon inquiry. The payment of taxes alone is not sufficient upon which to rest a claim of adverse possession. (1 Cal. Jur. 551, sec. 40, p. 556, sec. 46; 2 C. J. 69, sec. 30; *McGrath* v. *Wallace,* 85 Cal. 626 [24 Pac. 793].)

▋ The findings of fact are in irreconcilable conflict. The first finding of fact is "that all the material allegations of the plaintiff's complaint herein are true." The second finding of fact is "that all the material allegations of the defendant's answer herein are not true." This is a negative pregnant, and leaves the inference that all of the material allegations of the defendants' answer *are true,* except perchance one of them. The third finding of fact is "that the plaintiff is the owner in fee" of the real property described. While the fourth finding of fact is "that the *plaintiff's claim of title* . . . to said real property is *unfounded and without right."* ▋ Where findings are irreconcilably in conflict the judgment must be reversed, for the reason that it is impossible, under such circumstances, to determine which findings controlled the court in rendering its judgment. (*Los Angeles Land Co.* v. *Marr,* 187 Cal. 126 [200 Pac. 1051]; *Estep* v. *Armstrong,* 91 Cal. 659 [27 Pac. 1091]; *Learned* v. *Castle,* 87 Cal. 454 [18 Pac. 872, 21 Pac. 11]; 2 Cal. Jur. 1030, sec. 612.)

▋ The appeal was perfected in this case pursuant to section 953a of the Code of Civil Procedure. Respondent claims that the judgment should be affirmed because the transcript of proceedings which is certified by the trial judge does not contain a copy of notice to the clerk to prepare the proceedings pursuant to said section. This notice, in the language required by that section, however, was duly served and filed with the clerk within the time prescribed by law, and is properly certified by the clerk as a part of the record on appeal. This procedure complies with the statute. Section 953a, *supra,* provides that this method of presenting the proceedings on appeal is "in lieu of preparing and settling a bill of exceptions." Under our statute a notice of appeal was never required to be included

in a bill of exceptions. The foregoing section specifies exactly what shall be included in the transcript of proceedings. The notice of intention to appeal and to prepare the transcript is not included therein. The request for the transcript was properly included in the notice of appeal. This section provides that ''Any person desiring to appeal . . . (shall) file with the clerk . . . a notice stating that he desires or intends to appeal, . . . and requesting that a transcript of the testimony, . . . '' etc., be prepared. The clerk is the proper officer to certify to the correctness of the notice of appeal. (Code Civ. Proc., sec. 953; *Martin* v. *Pacific Gas & Elec. Co.,* 195 Cal. 544 [234 Pac. 321].) None of the cases cited by the respondent in this regard hold that this notice is a necessary part of the transcript of proceedings which must be certified to by the judge. All of these cases cited by respondent have reference to the necessity of including instructions given to the jury or refused, or the including of other matters specifically mentioned in that section. The record on appeal in this case is therefore sufficiently authenticated.

The judgment is therefore reversed.

Finch, P. J., and Hart, J., concurred.