[Civ. No. 11286. First Appellate District, Division One.—June 19, 1940.]

JERRIE WILSON, Appellant, v. W. F. NICHOLS et al., Respondents.

Harmel L. Pratt for Appellant.

Catherine A. McKenna, *in pro. per.*, for Respondents.

PETERS, P. J.—Plaintiff appeals from a decree quieting the title of defendant Catherine A. McKenna to a tract of land in the city of Los Angeles.

The task of this court in considering this appeal has been rendered most difficult because of the failure of counsel, and particularly because of the failure of respondents, to prepare proper briefs. ▮ Nowhere in respondents' several briefs is there a straightforward statement of their position or claims. Their main brief lacks cohesion and coordination. Both counsel frequently make reference to factual matters without transcript references. The headings and subheadings in respondents' brief do not comply with the spirit or purpose of rule VIII, section 2, of the Rules for the Supreme Court and District Courts of Appeal. Such practices are not to be condoned.

The tracing of the title here involved has been made difficult by reason of the fact that various people involved on both sides of this controversy used several different names, and because there are many deeds running to these parties, many of them completely outside the chain of title. Each of the litigants charges the other with fraud and trickery. There is reason to question the tactics of both litigants. The trial court attempted to keep counsel within reasonable limits

in their proof, but the record is full of deeds and judgment rolls in various actions whose connection with the title to this property is not apparent, and which neither counsel attempts to explain.

Plaintiff sought to establish record title in himself. He traced the title from the original Spanish patent down to 1887, at which time title was in William Paterson. On September 13, 1902, Paterson and his wife conveyed the property to the Beach Land Company. In 1911 Edward G. Geldmacher, in an action in which the Beach Land Company defaulted, quieted title to the property in himself. The circumstances surrounding the securing of that decree were, to say the least, suspicious. On March 27, 1935, Edward G. Geldmacher and Edward E. Geldmacher, his son, conveyed the property to E. M. Shannon, who in turn conveyed to plaintiff on August 23, 1935. Whether the Geldmacher who was the plaintiff in the Beach Land Company case was the same Geldmacher who conveyed to Shannon does not clearly appear.

As already indicated, the trial court quieted title in defendant Catherine A. McKenna. Defendants W. F. Nichols, W. P. Nichols and Winifred P. McKenna are all the same person, she being a daughter of Catherine A. McKenna. Defendant J. Irving McKenna is the husband of Catherine A. McKenna, and defendant W. J. Williams is a lessee of Catherine A. McKenna.

Defendants not only pleaded a record title in Catherine A. McKenna, but also pleaded title based on adverse possession, and that the plaintiff was estopped from claiming title by reason of a certain agreement entered into between the parties March 22, 1932. The trial court found in favor of Catherine A. McKenna on all the grounds urged.

Defendants, in support of their claim of record title in Catherine A. McKenna, rely on several different deeds. The first of these is a deed, the original of which Catherine A. McKenna testified she had lost. What purports to be a photostat of this deed was introduced into evidence. It is dated November 27, 1912. It names L. J. Zabolio, Edward G. Geldmacher, also known as Edward C. Goldmacher and Edward E. Goldmacher, and J. H. Smith as grantors. This deed purported to convey two lots in San Diego, and the lot in Los Angeles here in question, to Henry B. Hunt as grantee.

It was not recorded until January 22, 1935, and was then recorded at the request of Catherine A. McKenna. Inasmuch as Geldmacher did not convey to Shannon, through whom plaintiff claims, until March of 1935, this deed to Hunt recorded in January of 1935 takes priority over the Shannon deed. Hunt conveyed to W. P. Nichols, and she conveyed to Catherine A. McKenna. Plaintiff claims that the deed is a forgery. In support of this contention he called as his witness Hedley Beesley, the notary public whose name appears on the deed as having taken the acknowledgment of the three grantors. He testified that he had been a notary public in 1912, and that he kept a book of all of his notarial acknowledgments; that his records showed that on November 27, 1912, he had taken the acknowledgment of L. J. Zabolio to a deed in which Nate O. Sessions (not Hunt) was named as grantee; that the deed described two lots in San Diego and did not describe the property here in question; that that was the only acknowledgment taken by him on that day; that he did not know Geldmacher or Smith at that time, nor did he take their acknowledgments on that date; that he knew Zabolio well; that the signature on the acknowledgment was his; that the various words written on the acknowledgment were also written by him; that he was sure that he had not acknowledged a second deed on the date in question; that he could clearly remember the occasion, and that on that date Zabolio alone came to his office.

Edward G. Geldmacher, one of the grantees in the deed and the person through whom plaintiff derives title, was also called by plaintiff. On direct examination he stated that he did not know Henry B. Hunt, and that he had never sold property to Hunt. When shown the deed, he stated he had never owned any property in San Diego, and positively stated that he had not executed the deed in question. On cross-examination when asked to look at the signature on the deed he stated: "That resembles mine a great deal." He was then asked: "You would not say it was not your signature? A. It resembles mine . . . I would not say. I know I never signed anything like that in my life." It was the theory of plaintiff that Geldmacher's signature had been traced on the deed.

Defendants did not call Hunt as a witness or explain their failure to do so. They offered no evidence at all of the due

execution of the deed other than by the mere production of the document. Of course, under section 1951 of the Code of Civil Procedure, defendants properly could introduce the deed into evidence. That established a *prima facie* case. But when the plaintiff produced unequivocal testimony that the deed was a forgery, the burden of going forward with the evidence returned to the defendants. This burden they have failed to sustain. According to the uncontradicted evidence the deed is a forgery. ■ Moreover, physical examination of the deed itself discloses some very suspicious circumstances. On the back of the deed there have been obvious erasures, words have been typed with two different sizes of type and other words have been written over. This court may properly consider these matters. (*Herbert* v. *Lankershim*, 9 Cal. (2d) 409 [71 Pac. (2d) 220].) Obviously, therefore, there is no evidence to sustain record title in Catherine A. McKenna based on this deed.

■ Defendants also place some reliance on a deed dated November 23, 1912, purporting to be signed by Edward G. Geldmacher and naming John E. Phillips as grantee. John E. Phillips was one of the assumed names of J. H. Smith. Geldmacher denied signing this deed. This deed does not support defendants because it was not recorded, and later Geldmacher admittedly conveyed to plaintiff's predecessor in interest, who did record his deed.

■ Defendants also claim through a tax deed to the premises running to Edward E. Geldmacher and J. H. Smith, dated June 17, 1910, and recorded by Mrs. McKenna January 22, 1935. Attached to this deed is an unacknowledged deed from Smith to Geldmacher. Mrs. McKenna is now the sole heir of Smith. Plaintiff contends that as heir of Smith Mrs. McKenna in some collateral litigation disclaimed any interest in the matter. However that may be, it is clear that at most the tax deed establishes in Smith but a one-half interest in the property. Obviously, therefore, it cannot sustain the decree quieting the entire title in Mrs. McKenna. It should also be mentioned that Geldmacher testified, and was uncontradicted on this point, that he advanced the money for Smith to purchase the tax title.

Defendants also make some mention in their briefs of several other deeds through which they claim. Apparently these deeds were not recorded, and for that reason are immaterial.

■ The testimony is also far from sufficient to sustain title by adverse possession. This claim was predicated on the contention that either Smith or Mrs. McKenna had paid all taxes assessed against the property from 1910 to date. It may be assumed for the purposes of this appeal that the evidence is sufficient to show that fact, although the evidence is not as clear as might be desired. But payment of taxes is only one element in proving title by adverse possession. Another and fundamental requisite is that the claimant must have been in possession of the property, and that such possession must be by actual occupation, which is open and notorious. (1 Cal. Jur., p. 522, sec. 22; sec. 322, Code Civ. Proc.) The only evidence referred to by defendants to sustain the finding of possession is that of Mrs. McKenna. She testified that she had been familiar with the lot for many years; that in 1910 the lot was a great part of the time under water; it was then a duck pond; that in 1915 or 1916, by reason of certain flood control projects, the lot was partially drained; that in 1918 new streets were put through near the lot; shortly thereafter J. H. Smith leased the lot to Varney for a signboard and Smith was paid about $10 per year; about 1925 Varney leased the sign to Foster & Kleiser, and thereafter the sign was removed. There was also evidence that in 1934 Mrs. McKenna leased the lot to Williams, and that in 1935 (the cause was tried in March, 1936) Williams installed an oil pipeline in the lot. Defendants do not cite a single case to support their contention that this evidence is sufficient to support the finding that Mrs. McKenna and her predecessors have been in exclusive possession of the land for over five years. It is true that she testified that in 1918 Smith "leased" the lot to Varney and received $10 a year. She testified the sign was still up in 1925, but there is no testimony that Varney continued to pay the $10 per year to Smith, or that from 1918 to 1925 Varney continued to hold under Smith. Moreover, it is very doubtful whether the mere construction of a signboard on one corner of a lot is sufficient possession to satisfy the requirements of the code. (*Huling* v. *Seccombe,* 88 Cal. App. 238 [263 Pac. 362]; *Secret Valley Land Co.* v. *Perry,* 187 Cal. 420 [202 Pac. 449]; *Madson* v. *Cohn,* 122 Cal. App. 704 [10 Pac. (2d) 531].)

There is one other factor concerning the alleged title by adverse possession that should be mentioned. According to

the uncontradicted testimony of Geldmacher, Smith agreed with Geldmacher to pay the taxes on the lot and to handle it for Geldmacher, presumably for a one-half interest therein. Any payment of taxes by Smith, therefore, was at least partially for the benefit of Geldmacher, and any possession of Smith was with the consent and for the benefit of Geldmacher, at least as to one-half the lot. These matters probably will be clarified on the retrial.

The trial court also found that plaintiff made, executed and delivered to Mrs. McKenna on March 22, 1932, a certain agreement, and that the lot herein involved is one of the parcels of land mentioned in that agreement. The agreement in question was entered into between J. Truitt Bustamente and Jerrie Wilson on the one side, and Catherine A. McKenna on the other. The agreement recites that a full settlement and release has been made between the parties in reference to certain lands (which we may assume included the lot here in question), and that all of such lands in dispute have been conveyed to W. P. Nichols, with exceptions not here important, and then declares that in consideration of the sum of $500 paid to Jerrie Wilson by Catherine A. McKenna "the said parties hereto, and each of them, for themselves, their heirs or assigns, hereby agree and warrant that there are no outstanding deeds made by either of them, except those that appear of record, conveying said lands, and that they or either of them will not assert directly or indirectly, any adverse claim in or to any of the said lands, in their own name or in the name of any other person, and that they and each of them agree, that they or either of them will execute or cause to be executed, any and all further instruments, releases or disclaimers necessary to carry this agreement into effect". The trial court evidently believed that this agreement estopped plaintiff from claiming any interest in the lot. So far as the lot here concerned is involved, the agreement amounted to a release or quitclaim of whatever rights Jerrie Wilson had in the lot in 1932. At that time, according to plaintiff's present proof, he had no interest in the lot. Geldmacher did not convey to Shannon until March 27, 1935, and Shannon conveyed to plaintiff in August of that year. The agreement cannot be interpreted as intending to pass an after-acquired independent title to the property. (See 58 A. L. R. 360; *Rosenthal* v. *Silveira*, 42 Cal.

App. 637 [184 Pac. 58].) No evidence was offered by respondents that this was the intent of the parties, and certainly the agreement shows no such intent on its face.

The tactics employed by the parties to this appeal and their predecessors in seeking to acquire title to this lot are not to be commended. It is to be hoped that on the new trial both sides will make a straightforward declaration of their position and introduce evidence to sustain their respective contentions.

The decree appealed from is reversed.

Knight, J., and Ward, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 19, 1940.