[S. F. No. 17237.   In Bank.   Dec. 17, 1946.]

GEORGE RANDALL WEST, Respondent, v. META J. EVANS, as Administratrix etc., Appellant.

James P. Montgomery for Appellant.

Eugene T. Nebiolo for Respondent.

EDMONDS, J.—George Randall West, the adopted son of Melinda West, is the grantee in a deed made by her. At the time of the conveyance, the grantor owned only an undivided interest in the property as one of its owners in common. He bases his claim of title to the entire parcel of land upon his possession of it since the recordation of the deed and the payment of taxes by him during that time. The appeal from the judgment in his favor concerns the applicability of the doctrine of adverse possession under these circumstances.

In 1917, Melinda secured an interlocutory decree of divorce from her husband, James. By the decree, Melinda was awarded an undivided three-quarter interest and James an undi-

vided one-quarter interest in the real property which is the subject of this action. James and Melinda had four children. No final decree was rendered in the divorce action and James died intestate in 1919.

At the time of the divorce proceedings, the respondent was living with James and Melinda. Thereafter he and Melinda continued to occupy the property. He was legally adopted by Melinda in 1927, and in that year she executed and delivered to him a deed purporting to convey the entire fee in the property. The deed was recorded in 1931. All taxes, since 1927, have been paid by him. Some time prior to 1927, the four children of James and Melinda had left the home of their mother, and after that year only the respondent lived on the property with her. He remained until his marriage in 1937, and Melinda continued her occupancy of it until her death in 1944.

In July, 1944, Meta Evans, one of the children of James and Melinda, was appointed administratrix of the estate of James West. Respondent then brought this suit against her to quiet his title to the property. The administratrix cross-complained, seeking a decree quieting title to a one-quarter interest in the estate of her father, and demanding judgment in the amount of one-fourth of the rental value of the property, less taxes paid. She also asked the court to compel the respondent to pay to the estate the market value of the one-quarter interest assertedly owned by the deceased. Following a trial, the court found that the respondent had obtained title to the property by adverse possession. The appeal is from the judgment entered accordingly.

The administratrix asserts that West's possession was at no time adverse to the heirs of her father as to the one-quarter interest owned by him because in law the possession of one cotenant is the possession of all of them; that the recordation of the deed and the possession of West by living on the premises with his adopted mother are not sufficient to constitute an ouster of the cotenants; and that the payment of taxes is offset by the rent due from him on account of his occupancy of the property.

The respondent justifies the judgment giving him title upon the ground that the recordation, in 1931, of the deed naming him as grantee constituted constructive notice to the heirs of James West that he was claiming adversely to them. He takes the position that the payments of taxes made by him may not

be considered as rent, and measures the evidence as fully supporting the findings in his favor.

To establish title by adverse possession, the claimant must establish five elements in connection with his occupancy of the property. (*Unger* v. *Mooney,* 63 Cal. 586 [49 Am.Rep. 100] ; see Code Civ. Proc. §§ 321 et seq.) (1) Possession must be by actual occupation under such circumstances as to constitute reasonable notice to the owner. (*Unger* v. *Mooney, supra; Thompson* v. *Pioche,* 44 Cal. 508; *Wilson* v. *Nichols,* 39 Cal.App.2d 527 [103 P.2d 1007] ; *Huling* v. *Seccombe,* 88 Cal.App. 238 [263 P. 362].) (2) Possession must be hostile to the owner's title. (*Unger* v. *Mooney, supra; Grimmesey* v. *Kirtlan,* 93 Cal.App. 658 [270 P. 243] ; *Madden* v. *Hall,* 21 Cal.App. 541 [132 P. 291].) (3) The holder must claim the property as his own, either under color of title, or claim of right. (*Unger* v. *Mooney, supra; Thompson* v. *Pioche, supra; Lovell* v. *Frost,* 44 Cal. 471.) (4) Possession must be continuous and uninterrupted for five years. (*Akley* v. *Bassett,* 189 Cal. 625 [209 P. 576] ; *Unger* v. *Mooney, supra; City of San Jose* v. *Trimble,* 41 Cal. 536.) (5) The possessor must pay all of the taxes levied and assessed upon the property during the period. (*Unger* v. *Mooney, supra; Central Pac. R. R. Co.* v. *Shackelford,* 63 Cal. 261.) Unless each one of these elements is established by the evidence, the plaintiff has not acquired title by adverse possession.

Actual possession, said Chief Justice Field, means "a subjection to the will and dominion of the claimant" (*Coryell* v. *Cain,* 16 Cal. 567, 573). It is established not alone by the assertion of title, but it must be coupled with acts of ownership which proclaim to the world, and bring notice to the owner, that a right is claimed in the land over which the claimant is seeking to exercise dominion. (*Hart* v. *Cox,* 171 Cal. 364, 367 [153 P. 391].) But in the present case, there was no change in possession at any time after the date of the interlocutory decree. Melinda continued to live on the property until her death in 1944, and West occupied it with her until his marriage in 1937. To the public generally, and to the heirs of James West, after the date of the interlocutory decree when the cotenants acquired title, there was no indication of any change in possession from Melinda.

The testimony of West conclusively negatives his claim that, at any time prior to 1944, he had actual possession

of the property. According to his explanation of the situation, from 1917 until the date of her death in 1944, Melinda West "stayed in her home." During the 20 years following 1917 he lived with her. Upon his marriage in 1937 he "moved off gradually." Referring to that time, he declared: "She didn't want anybody to live with her and she didn't care to live with any of her relatives. She said, 'This is my home and I want to stay right here.' " ■ The evidence conclusively establishes that for many years West paid the taxes on the property, but such payment is not an act of ownership equivalent to possession. The payment of taxes is an additional requirement for the acquisition of title by adverse possession. (Code Civ. Proc., § 325.)

■ The exclusive occupancy by a cotenant is deemed permissive; it does not become adverse until the tenant out of possession has had either actual or constructive notice that the possession of the cotenant is hostile to him. (*Faubel* v. *McFarland,* 144 Cal. 717 [78 P. 261]; *Winterburn* v. *Chambers,* 91 Cal. 170 [27 P. 658]; *Miller* v. *Myers,* 46 Cal. 535; *Nelson* v. *Sweitzer,* 22 Cal.App.2d 382 [71 P.2d 85]; *Tabler* v. *Peverill,* 4 Cal.App. 671 [88 P. 994].) West argues that the recordation of the deed in 1931 constitutes such notice and in support of his possession, he leans heavily upon *Johns* v. *Scobie,* 12 Cal.2d 618 [86 P.2d 820, 121 A.L.R. 1404].

■ However, the recordation of a deed purporting to convey the entire property in land to a tenant in possession is not, as a matter of law and independent of any other fact, notice to his cotenant of the adverse character of the grantee's possession. In the Johns case, the claimant had lived on the property with his uncle, the owner of it, until the uncle's death. His possession then became exclusive and he recorded a deed, which had not been delivered, but which gave him color of title. It was the continued possession by him after the death of his uncle plus the recordation of the deed which, the court held, constituted notice to the other heirs who became cotenants with him at the time the uncle died. Another decisive factor was that the claimant, at the time of the commencement of his exclusive occupancy of the property, knew nothing of the existence of the other cotenants.

Neither *Pease* v. *Gibson,* 37 Cal.App.2d 353 [99 P.2d 353], nor *Satariano* v. *Galletto,* 66 Cal.App.2d 813 [153 P.2d 201], aid the respondent. In the first of these cases there was an exclusive occupancy, under color of title, by persons other

than the original occupying cotenant, which was sufficient to constitute notice to the cotenants out of possession of an adverse claim to the property. The possession of such persons is not of itself evidence of the claim of the adverse possessor, but it is notice to the cotenants out of possession sufficient to put them upon inquiry and to charge them with the knowledge that would have been received from such inquiry. (*Winterburn* v. *Chambers, supra;* see, also, *Unger* v. *Mooney, supra; Fair* v. *Stevenot,* 29 Cal. 486.) In the Satariano case, recordation was not relied upon; other acts consistent with a claim of ownership were the basis of the decision.

The only act upon which West can rely to give notice of his claim of ownership is the recordation of the deed in 1931, and such recordation alone is not sufficient for that purpose. For these reasons, there is no evidence to support the findings of the trial court in regard to adverse possession. The evidence is undisputed and it does not show the elements which the law requires to establish such a title.

The judgment is reversed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Respondents' petition for a rehearing was denied January 14, 1947.