[Civ. No. 9064.   Third Dist.   May 9, 1957.]

GEORGE E. HOPKINS et al., Respondents, v. PERRY H. BLACK et al., Appellants.

Millington & Millington for Appellants.

Clewe, Blade & McDonald for Respondents.

SCHOTTKY, J.—Plaintiffs commenced an action to quiet title to 6.2 acres of land, for damages for removal of some timber on said 6.2 acres, and for damages for the pollution of a spring. Following a trial, the court, sitting without a jury, decided in favor of plaintiffs as to the ownership of the 6.2 acres, and awarded plaintiffs damages. Defendants' motion for a new trial was denied by operation of law, and they have appealed from the judgment.

The parties are the owners of adjoining parcels of land. The correct location of the boundary separating such parcels is the core of the dispute between them. Through separate chains of title they derive from a common owner, one Zada J. Schauer.

Respondents' chain of title is as follows: (a) In 1932, Schauer conveyed to one Whims a parcel of property with respect to which the easterly and southerly boundary is described as: "The center of the County Road from Flea Valley to Concow." This deed contained no reference to the area or acreage so conveyed. (b) In 1937, said Whims conveyed a parcel of land to one Stowell. The description of the land so conveyed is identical to the description in the deed to Whims, above referred to, except that following the description of the land there appear the words, "containing 3 acres, more or less." (c) In 1947, said Stowell conveyed the same land to respondents, using the identical description as contained in the deed to Stowell.

Appellants' chain of title is as follows: (a) In 1938, Schauer conveyed to one DeAlberts certain lands, excepting therefrom, however, a certain parcel of land, the description of which is identical to that found in the deed from Schauer to Whims, above referred to. Such exception, likewise, carries no reference to acreage. (b) In 1943, said DeAlberts conveyed the land (less two further exceptions which are not pertinent to the issues herein) to one Smith. This conveyance contained the same description of the land excepted in the deed from Schauer to Whims, above referred to, except that following the reference to the conveyance to Whims the following words are added: "containing 3 acres, more or less." (c) In 1949, said Smith conveyed the land to the appellants, using the identical description as contained in the deed to Smith.

It was and is the position of appellants that the easterly and southerly boundary of the parcel so acquired by respondents is the center line of a certain road other than the road contended by respondents and found to be the correct road by the trial court. Consistent with the position of appellants, the area of the parcel so acquired by respondents would be approximately 3 acres, whereas, the area of the parcel contended for by respondents, and so found by the trial court, is approximately 9.2 acres. Thus it is the difference of 6.2 acres which is in dispute. At the present time the road contended for by the respondents is the main Flea Valley Road.

Section 2077 of the Code of Civil Procedure provides:

"The following are the rules for construing the descriptive part of a conveyance of real property, when the construction is doubtful and there are no other sufficient circumstances to determine it:

. . . . . . . . . . . .

"2. When permanent and visible or ascertained boundaries or monuments are inconsistent either with the measurement, either of lines, angles, or surfaces, the boundaries or monuments are paramount."

Appellants concede that if there was only one Flea Valley Road, the natural boundary, a road, would be conclusive as against the measurement of three acres. However, appellants contend that in 1932, when this property was all owned by one person and sold in two parcels, there were two Flea Valley Roads, and since it cannot be ascertained which of the roads was the one referred to in the deed, the natural boundary is not controlling, but the boundary is controlled by the measurement of the three acres, and therefore the road on

the west is the boundary meant by all the parties. Appellants refer to that road contended for by them as the west road, and the road contended for by the respondents as the east road, while the respondents refer to the former as Road Number 2 and the latter as Road Number 1. For convenience we will adopt the respondents' designation.

Appellants contend that the evidence is conclusive that Road Number 2 was the one intended, that there is not only no conflict in the testimony, but that the two witnesses produced by the plaintiffs also corroborated the fact that in 1932 there were two Flea Valley Roads. Appellants then set forth the testimony of certain witnesses as follows: (1) J. A. Bumgarner, a civil engineer, who testified for plaintiffs to the effect that both roads were there before Butte County had any roads, and that he didn't know whether Road Number 2 went to Flea Valley or not. (2) Warren H. Peck, another witness for plaintiffs, testified in effect that Road Number 2 went from the Witherow Place, then to Saw Mill Peak, and then you could come out at Flea Valley, and that this was so at least from 1906. (3) Warren Pittman, a real estate operator living in Butte County for many years, testified in effect that while he had never been to the end of it, Road Number 2 had been known as the old Flea Valley Road. (4) Earl Simmons, a defendant, testified in effect that in 1938, his uncle logged off the land now owned by Hopkins and also the land owned by Black, and that at that time Stowell owned the Hopkins land and Mrs. DeAlberts owned the land now owned by Black, and that Stowell was paid by Simmons' uncle for the logging off of the land up to the Road Number 2, namely, the 3 acres, but that his uncle logged off and paid DeAlberts for all of the logging off of the land on the balance of the 9.3 acres, being the land lying between Road Number 2 and Road Number 1, and Stowell was present during the logging off of the latter parcel for DeAlberts and offered no objection whatsoever. (5) Louis Kirby, who lived in the area between 1880 and 1900, testified in effect that among the old-timers Road Number 2 was called Concow-Saw Mill Peak Road, and from Saw Mill Peak it was called the Saw Mill Peak-Flea Valley Road, but was all one road.

Notwithstanding the earnest and able argument of appellants, we are unable to agree with them that the evidence shows without conflict that Road Number 2 was the road intended. For, as pointed out by respondents, there is the following testimony in the record: (1) J. A. Bumgarner,

Assistant County (Butte) Road Engineer from 1919 to 1927, and County Road Engineer from 1927 to 1943, testified that Road Number 1 has been known to him since 1911. The road was known as Oroville-Fallbrook Road at one time. In 1911 it was known as Oroville-Flea Valley Road. He has never known of any other road in the area called Oroville-Flea Valley Road. (2) Warren H. Peck testified that Road Number 1 has been known as Flea Valley-Concow Road, or Concow-Flea Valley Road ever since 1906, and its course has not changed. Road Number 2, by which one could leave Concow-Flea Valley Road (Number 1), arrive at Saw Mill Peak and from there a brushed out road or trail would enable one to reach Flea Valley, has never had a name. (3) Earl Simmons, an appellant, testified that Road Number 2 is a means to reach Saw Mill Peak, from whence one may reach Flea Valley, but is not now in use, nor has he ever been to Flea Valley via Road Number 2. (4) Louis Kirby testified that Road Number 2 was his father's private road called Concow-Sawmill Peak Road before it was abandoned in 1900. Since 1903, or earlier, Road Number 1 has always been known as Concow-Flea Valley Road and was and is a public road.

In addition to the above testimony, a map made in 1948 by the State of California, Department of Natural Resources, Division of Forestry, shows that while one could depart from Road Number 1, traverse Road Number 2 and eventually arrive at Flea Valley, the distance would be approximately twice as far as traveling to Flea Valley by Road Number 1 only.

Respondents point out that aside from the foregoing evidence there is additional evidence to support the findings and judgment. Reference to the deeds of conveyance in the several chains of title discloses the following wording in all such documents: ". . . thence at a right angle east to a point in the center of the County Road from Flea Valley to Concow; thence southwesterly along the center of said road. . . ." Reference to the exhibits reveals that from the intersection of the northerly boundary of the disputed property, Road Number 1 bears southwest. Plaintiff's Exhibit 6, in which Bumgarner penciled two parallel lines indicating the location of Road Number 2, and Plaintiffs' Exhibit 5, an aerial map, show Road Number 2 running from the northerly boundary of the parcel in a southeasterly direction. The descriptions in the deeds do not say "southeasterly," but say "southwesterly."

The finding of the trial court was that Road Number 1 (the easterly road) was the natural boundary referred to in the deed as the county road from Flea Valley to Concow. The court stated in its memorandum of opinion:

"It is the opinion of the Court that of the two roads contended for by the respective parties the easterly road claimed by plaintiff, and, not the westerly road, claimed by defendants, has been established by a preponderance of the evidence as the proper road to be used in construing the deed to Hopkins. Therefore the Court must ignore the statement in the deed referring to 3 acres more or less."

It is clear that the evidence upon the issue as to which was the "County Road from Flea Valley to Concow," referred to in the deed to respondents, was conflicting, but we are also convinced that there was substantial evidence to support the finding of the trial court.

Appellants next seek to invoke the theory of adverse possession and cite the case of *Doyle* v. *Bradshaw*, 41 Cal.App. 247 [183 P. 185], where it is stated in the headnote:

"Where adjoining property owners, following a dispute regarding the true location of the boundary line between them, of which they are uncertain, agree upon its location, and thereafter hold possession of the property up to the agreed line and pay the taxes thereon, the agreed line becomes in law the true line between the properties, regardless of the accuracy of the agreed location as made to appear by subsequent survey or measurement."

Appellants contend that Black has claimed this land openly and notoriously and that Hopkins has been informed of that ever since he purchased his land in 1947, and Black has paid the taxes.

Respondents, in reply, point out that the record shows that appellants had possession only for a brief time when they trespassed upon the property, and for which trespass damages were awarded in this action. There is no testimony that appellants claimed the property adversely or that if there was a claim it was open and notorious. Appellants admit that the Assessor of Butte County testified that the lands are assessed to Hopkins, but try to show mathematically by acreage that Black must be paying the taxes on this disputed parcel. However, the assessor also testified that if Black was being assessed for too much acreage he should object. The testimony showed that erroneous references to the number of acres, taken from the first deed so referring, did not affect the assessed

valuation, which was based upon the description of respondents' property, using the Road Number 1 as the Concow-Flea Valley Road.

There was no evidence that there was any agreement as to the boundary line, and the implied finding of the court was that there was no such agreement.

█ It is clear that appellants have not established title to the land in dispute by adverse possession. For as stated in *West* v. *Evans,* 29 Cal.2d 414, at page 417 [175 P.2d 219]:

"To establish title by adverse possession, the claimant must establish five elements in connection with his occupancy of the property. [Citations.] (1) Possession must be by actual occupation under such circumstances as to constitute reasonable notice to the owner. [Citations.] (2) Possession must be hostile to the owner's title. [Citations.] (3) The holder must claim the property as his own, either under color of title, or claim of right. [Citations.] (4) Possession must be continuous and uninterrupted for five years. [Citations.] (5) The possessor must pay all of the taxes levied and assessed upon the property during the period. [Citations.] Unless each one of these elements is established by the evidence, the plaintiff has not acquired title by adverse possession."

█ Appellants' final contention is that there is no evidence to justify the award of $350 for the pollution of a spring and silting of pipeline. There is no merit in this contention. There was evidence that the logging operations of appellants caused a muddy condition of the stream which led into the spring and that it made the water too muddy for domestic use, necessitating the hauling of water from another source 2 miles away; that it was a week before the water cleared up so it could be used; that thereafter when it rained the water got muddy again, although previously, before the operations of appellants, the rainfall did not affect the clarity of the water. In view of this evidence we cannot hold that the award of $350 is without substantial support in the record.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.