[Civ. No. 905.   Fifth Dist.   Apr. 26, 1968.]

EVANGELOS POLAKIS, Plaintiff, Cross-defendant and Respondent, v. MATINA POLAKIS, Defendant, Cross-complainant and Appellant.

Cardozo, Trimbur & Nickerson and H. E. Barker, Jr., for Defendant, Cross-complainant and Appellant.

Cleveland J. Stockton for Plaintiff, Cross-defendant and Respondent.

CONLEY, P. J.—This case involves a fiercely contested domestic battle between Evangelos Polakis, a Modesto surgeon, and his wife, Matina. In some of its aspects the judgment of divorce that is questioned on this appeal must be affirmed, but, because of irreconcilable contradictions in the findings concerning the property problems of the parties, those issues will have to be redetermined.

The ancestry of each of the parties is of Greek derivation, and the trial judge in his memorandum of decision characterized them as ''. . . persons of unusual and exceptional intellect, prone to be highly emotional. . . .'' ▆▆▆ They were married on August 21, 1960, but their quarrels and apparent incompatibility caused the wife, some years ago, to commence and pursue to completion an action for separate maintenance, although they had at that time one child, a boy born in October 1961. The decree was granted on March 2, 1964, and the two parties then lived separately until August 12, 1965. The husband, during that time or a large part of it, was qualifying as a surgeon.

An attempt at reconciliation, which appellant contends resulted in an actual reconciliation, began, and the parties lived together for approximately seven months principally in Modesto but for a short time in Fresno, and partly during a journey to Greece; during this period another child was conceived and a daughter was born in May of 1966.

On March 14, 1966, Dr. Polakis started a complaint for divorce in Stanislaus County; on May 11 of the same year, Mrs. Polakis filed an answer and a cross-complaint. When the case came on for trial, the following stipulation was entered into in open court:

"MR. BARKER: [Attorney for defendant] Ready for the Cross-Complainant and Defendant, Your Honor. I believe at this time, counsel for Plaintiff and ourselves have a stipulation in which to enter with reference to the divorce itself, Your Honor, and that would be that it be stipulated that the Cross-Complainant, may proceed with her Cross-Complaint and take the divorce, however, without any prejudice to Your Honor's decisions with reference to the matters of property in this case. And we'd request as a matter of convenience for the Court—that we proceed on our grounds for the divorce and then following that go into the property aspects with all parties present.

"THE COURT: All right, is that agreeable with you?

"MR. STOCKTON: Yes, one additional stipulation, we'll also stipulate to the custody of the two children.

"THE COURT: All right."

There is some doubt as to the exact meaning of this stipulation, but it is not our view and apparently not that of anyone else that this agreement between counsel meant that the trial court could assign the property as he saw fit entirely apart from any legal right to it. The meaning rather was that if the evidence justified it the cross-complainant could get her divorce without contest, but that the property division would be tried out later and that the property should be divided in accordance with the judge's determination of the respective rights of the parties. After an attempt at a full hearing on the question of property, the court made findings as to the property ownership that are inconsistent and completely conflicting. If it be assumed that the San Mateo court in the decree terminating the suit for separate maintenance divided the community property of the parties as of that date, then the question whether the wife would be entitled to further community property for the second period during which the two lived together and were attempting, or as maintained by the appellant, succeeded in effecting a reconciliation in the period between August 12, 1965, and February 4, 1966 (or March 14, 1966 when Dr. Polakis filed his complaint for divorce in Stanislaus County), would depend on whether or not the attempted reconciliation became a complete reconciliation. If there was in fact a complete reconciliation during that period it would permit the trial court to ascertain what community property was acquired during that period, and to divide it as between husband and wife. On the contrary, if during that period there was only an unsuccessful attempt to

effect a reconciliation, no community property could be acquired, with the consequence that no award of community property by the Stanislaus County Superior Court would be proper. The trial court should have found one way or another. But, unhappily, the court found both ways, so that it was not decided whether or not the cross-complainant would be entitled to an award of a portion of the community property commensurate with the ideas of her counsel as to amount. In the findings it is said: ''That on or about March 2, 1964, the cross-complainant was awarded a decree of separate mainte- nance in the Superior Court of the State of California for the County of San Mateo, the parties having prior thereto separated and ceased to live together as husband and wife; and that on or about August 12, 1965, the parties attempted reconciliation but that the same could not be effected, and on February 4, 1966, the attempted reconciliation was termi- nated, and since that date the litigants have not lived together as husband and wife.'' And in the conclusions of law signed by the court it is further said: ''That the cross-defendant shall pay to the cross-complainant the additional sum of $1,000.00, payable at the rate of $100.00 per month beginning on February 1, 1967, and a like payment on the 1st day of each month thereafter, until the entire sum of $1,000.00 shall have been paid by way of adjustment of community property rights, not by way of alimony.''

And in the so-called special findings signed by the court and filed on the same day as the general findings, it is also said:

''I

''That the cross-complainant and cross-defendant acquired during the period of attempted reconciliation certain com- munity property consisting of the earnings from the medical practice of the cross-defendant in the approximate sum of Two Thousand Four Hundred Dollars ($2,400.00) per month less operating expenses of One Thousand Eight Hundred Dollars ($1,800.00) per month and less living expenses; and that the community property remaining is less than Two Thousand Dollars ($2,000.00).

''II

''That the period of time during which said community property was accumulated was between August 12, 1965 and February 4, 1966.''

Considering the findings as a whole, what did the court conclude—that there was a reconciliation or that there was

not? If there was a reconciliation, there was additional community property in existence during the period when the two lived together. If there was only an unsuccessful attempt at reconciliation, there was no additional community property. The court has found that there was not a reconciliation, but it has also determined that community property was acquired during that period; if community property was in fact acquired during the period in question, then it follows that it must have been caused by the fact that there had been a reconciliation and that the vital marital warfare had ended, at least for a time.

We have searched in vain in the transcript for a copy of the San Mateo County decree. It may well be that the form of that decree should properly lead to some different conclusion than that outlined above, but it will be essential to carry on a more accurate inquiry in any event as to the property rights of the parties.

Other conclusions in the judgment are not subject to attack. The court had ample reason to grant a decree of divorce to the wife and to make the provision which it did for the continuing support of the children as well as for their custody and the right of visitation of the husband.

The judgment is affirmed except as to the question whether a reconciliation was effected and the property issues, and in those respects the judgment is reversed and referred back to the trial court to determine whether a completed reconciliation occurred, the rights of the parties with respect to the existence or nonexistence of community property and the division and assignment of such property, if any, to the respective spouses; appellant to recover her costs of appeal.

STONE, J.—I concur. The trial court found that despite the parties living together seven months, taking a trip to Europe, and begetting a child, there was no reconciliation. But the court also found that the wife was entitled to $1,000, a finding that can be supported upon no theory of law other than that the money is her share of property jointly accumulated while the parties were living together. Aside from being miserly pay, indeed, for seven months' consortium and mothering respondent's child, as remuneration it is in direct conflict with the finding there was no reconciliation, and there is no evidence in the record to support an award in this amount. Therefore, these inconsistent findings as to a material issue require a reversal. (*Miller* v. *Smith,* 179 Cal.App.2d 114 [3

Cal.Rptr. 492] ; *Huling* v. *Seccombe,* 88 Cal.App. 238 [263 P. 362] ; 2 Witkin, Cal. Procedure (1954) p. 1852.)

GARGANO, J.—I dissent. Appellant, Mrs. Polakis, was granted a judgment for separate maintenance against her husband, Dr. Polakis, on March 2, 1964. The parties' community property rights were adjudicated at that time. The parties then attempted a reconciliation from August 12, 1965, until February 4, 1966. Dr. Polakis filed his complaint for divorce one month later, on March 14, 1966. Thus, it is absolutely clear (and appellant practically concedes) that whether or not she was entitled to an additional share of the property accumulated by Dr. Polakis during the period of attempted reconciliation depends on whether the parties had effected an actual reconciliation.

In my judgment the trial judge clearly and unequivocally found that the parties had not reconciled. Since there is substantial evidence in the record to support this finding of fact, the trial judge's determination is conclusive on appeal (*Small* v. *Small,* 123 Cal.App.2d 870 [268 P.2d 63] ; *Nemer* v. *Nemer,* 117 Cal.App.2d 35 [254 P.2d 661] ). In fact, it is quite obvious that when the trial court made the $1,000 adjustment in favor of Mrs. Polakis, referred to by the majority, he was under a misconception of the law; he probably confused property rights arising during a period of putative marriage with property rights accumulated during a period of an attempted reconciliation. However, since the aggrieved party does not complain of the court's misapplication of the law, the judgment should not be reversed on this ground.

In any event, it is admitted that appellant accepted the sum of $1,000 which the court awarded to her. Since appellant was entitled to share in the property accumulated by Dr. Polakis during the reconciliation period *only* if a reconciliation had been effected, she is now estopped to attack the judgment under the rule articulated in *Schubert* v. *Reich,* 36 Cal.2d 298 [223 P.2d 242]. In other words, while it is true that the rule of estoppel has no application where the benefits accepted by an appellant are such that appellant would be entitled to them no matter what the results of the appeal might be, this is not the case in this appeal. Appellant was either entitled to something or nothing.

I would affirm the judgment.